UNITED STATES of America,
Plaintiff,

v.

ONE 2001 CADILLAC DEVILLE SE-
DAN Vin: 1G6KE54Y51U148181,
Defendant.

No. 04–70196.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 31, 2004.

Julie A. Beck, Detroit, MI, for Plaintiff.

*MEMORANDUM AND ORDER DENY-
ING CLAIMANT'S MOTION TO
SET ASIDE ENTRY OF DEFAULT
AND DEFAULT JUDGMENT*[1]

COHN, District Judge.

## I. Introduction

This is a forfeiture case. Plaintiff Unit-
ed States of America is suing Defendant

---

1. The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. *See* E.D. Mich. LR 7.1(e)(2).

One 2001 Cadillac Deville Sedan (VIN 1G6KE54Y51U148181).

Before the Court is Claimant Anthony George Arabo's Motion to Set Aside Entry of Default and Default Judgment. For the reasons that follow, the motion is DENIED.

## II. Background[2]

### 1. Factual Background

On August 12, 2003, members of the Combined Hotel Interdiction Enforcement (CHIEF) task force began surveillance of a residence located at 675 Walled Lake Road, Walled Lake, Michigan, based on information that Hector Millan brought approximately 1,500 pounds of marijuana into the Detroit area and that he would be staying at that address. CHIEF task force members also had information that Millan would be driving a gold Cadillac with license place number 332 D22, the Defendant vehicle (the Cadillac).

On August 17, 2003, task force members observed Millan exit the Walled Lake residence and load several flattened cardboard boxes and a black suitcase into the trunk of the Cadillac. Agents then watched Millan get into the passenger seat of the Cadillac as an unidentified male sat in the driver's seat and drove away with a red Nissan following. Both vehicles turned from Fourteen Mile Road onto Colony Hill where they stopped. The driver of the Cadillac got into the Nissan. Millan then moved to the driver's seat of the Cadillac and drove to a residence at 32665 Colony Hill, Franklin, Michigan, while the two unknown males in the Nissan waited down the street.

Task force members watched Millan remove the flattened boxes from the trunk of the Cadillac and enter the Colony Hill residence. About one hour later, Millan exited the residence and backed the Cadillac to the garage at the Colony Hill address. Agents watched cardboard boxes being loaded into the rear of the car. The boxes appeared to be the same type that Millan had taken into the house earlier, but the boxes were now assembled and looked like they had weight in them. Agents watched Millan get into the Cadillac and drive away, later meeting up with the two males waiting down the street in the Nissan. One of the males in the Nissan got into the Cadillac. Agents followed the two vehicles, along with a Cadillac Escalade, to 17144 Eureka, Detroit, Michigan, where the boxes were unloaded and taken into the Eureka location.

Task force members later observed a Hummer arrive at the Eureka address. Agents watched what appeared to be the same boxes that were taken out of the Cadillac being loaded into the Hummer. Pursuant to a traffic stop and consent search of the Hummer by the Michigan State Police, approximately 20 pounds of marijuana was discovered in the boxes located in the Hummer.

Walled Lake Police Department officers stopped the Cadillac later that evening at the driveway of 765 E. Walled Lake Drive. The Cadillac was occupied by Andrew David Moore, Adam Shaughnessy, and Millan. Officers found Moore was carrying $3,720.00 in U.S. currency, Shaughnessy was carrying $4,200.00 in U.S. currency, and Millan was carrying $10,160.00 in U.S. currency. Moore and Shaughnessy were identified as the males traveling with Millan earlier that day. A narcotics detection dog alerted positively to the scent of a controlled substance on the property bags in which the currency was contained. Millan was arrested on an outstanding war-

---

**2.** The factual and procedural background is gleaned from Plaintiff's Response to Arabo's Motion to Set Aside Entry of Default and Default Judgment. Arabo does not address the factual or procedural background in his motion or brief.

rant issued by the Walled Lake Police Department.

When officers questioned Moore about the currency, he stated that he had received the money from Millan as compensation for driving cars between Walled Lake and Pontiac. He also stated that he did not know what was in the cars but that he suspected it was illegal because he was being paid $200.00 each time for 20 minutes work.

A state-authorized search warrant executed at 17144 Eureka, Detroit, Michigan, on August 18, 2003, resulted in the seizure of a gallon-size Ziploc freezer bag containing approximately 176.9 grams of marijuana, one Ashiba MP–5 scale, three U–Haul boxes, and one collapsible arm gun.

A state-authorized search warrant executed at 32665 Colony Hill, Franklin, Michigan, on August 18, 2003, resulted in the seizure of approximately 700 pounds of marijuana, $8,065.00 in U.S. currency, one Point Blank bullet-proof vest, one hand gun, two rifles, ammunition, two digital scales, and eight cardboard U–Haul boxes.

The Government then sued the Cadillac, alleging that it had been used to facilitate illegal drug trafficking and that it therefore is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(4).

## 2. Procedural Background

The Federal Bureau of Investigation (FBI) sent notice of the Cadillac's seizure to title-owner Anthony George Arabo (Arabo). Arabo filed a claim in the administrative proceeding with the FBI, through his counsel, William R. Ford (Ford). Upon receipt of the claim in the administrative proceeding, the FBI referred the case to the United States Attorney's Office for a judicial proceeding.

The Government served Ford with the Complaint for Forfeiture and the Summons and Warrant of Arrest by regular and certified U.S. mail. Pl.Ex. 1. The certi-

fied mail receipt was signed on January 21, 2004. Pl.Ex. 2. Under Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules), a verified claim was required to be filed on or before February 20, 2004, and an answer was required to be filed on or before March 12, 2004. In accordance with Rule C(4) of the Supplemental Rules, notice of the action and the deadlines for filing a verified claim and answer was published in the *Detroit Legal News* on January 30 and February 6 and 13, 2004. Docket 3. Neither a verified claim nor an answer was filed.

On March 15, 2004, the Government sent a letter to Ford stating that the United States would be seeking a default judgment if he did not file a verified claim and answer on behalf of Arabo. Pl.Ex. 3. The letter also asked Ford to notify the United States Attorney's Office if he was not representing Arabo in this action. Ford did not file a verified claim or an answer. The Government says he never responded to the letter.

On April 8, 2004, the Government served Arabo with the Complaint for Forfeiture and the Summons and Warrant of Arrest by regular and certified U.S. mail. Pl.Ex. 4. The certified mail receipt was signed by George Arabo on April 17, 2004. Pl.Ex. 5. A verified claim was required to be filed by May 17, 2004, and an answer was required to be filed by June 6, 2004. Arabo did not file a verified claim or an answer.

On June 28, 2004, the Government served Arabo and Ford via regular and certified U.S. mail with the (1) Clerk's Entry of Default, (2) Request to Clerk for Entry of Default Judgment Against Anthony Arabo and Declaration of Julie A. Beck in Support of Request to Clerk for Entry of Default Against Anthony Arabo, (3) Motion by the United States for Entry of Default Judgment, (4) Brief in Support of

Motion for Entry of Default Judgment, and (5) Affidavit of Majority, Non–Incompetence and Military Status on June 28, 2004. Pl.Ex. 6. Arabo's and Ford's certified mail receipts were signed and dated on June 29 and 30, 2004, respectively. Pl. Exs. 7–8.

On June 25, 2004, the Clerk's Entry of Default was filed. Ford was served with the notice of the clerk's entry. Pl.Ex. 9.

On June 28, 2004, Ford wrote a letter to Arabo in which he terminated his representation of Arabo based on (1) Ford's request to communicate with Arabo was not answered, (2) Arabo's failure to sign certain documents, and (3) Arabo's failure to pay a retainer fee. Docket 14. The letter also advised Arabo that he could be subject to default if he does not retain new counsel.

The Court set a date for the hearing on the Motion for Default Judgment, and Arabo was served with the Notice of Hearing. Docket 15. The hearing was held on July 14, 2004. Neither Arabo, Ford, nor any other representative for Arabo appeared. The Court entered the default judgment against the Cadillac. Docket 16.

### 3. The Claim

On July 30, 2004, Ford, on behalf of Arabo, filed this Motion to Set Aside Entry of Default and Default Judgment. The Government filed its response brief on August 12, 2004, and argues as a threshold matter that Arabo does not have standing to contest the default judgment because he failed to file a verified claim and answer. Because the Court agrees with the Government and finds that Arabo does not satisfy the standing requirement to contest the forfeiture, Arabo's motion is DENIED.

**3.** Supplemental Rule C(6) provides:

[A] person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right (A) within 30 days after the earlier of (1) the date of

### III. Legal Standard

It is well settled that a claimant seeking to contest a governmental forfeiture action must have (1) Article III standing required for any action brought in federal court as well as (2) statutory standing through compliance with Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules). *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir.1998); *see also U.S. v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir.1990). With respect to Article III standing, a claimant must demonstrate "a legally cognizable interest in the defendant property. A property interest less than ownership, such as a possessory interest, is sufficient to create standing." *Currency $267,961.07*, 916 F.2d at 1107. To gain statutory standing, a claimant must strictly comply with Supplemental Rule C(6);[3] failure to satisfy both the Article III and statutory standing requirements precludes a claimant from contesting a government forfeiture action. *Id.* at 1108.

### IV. Analysis

### 1. Article III Standing

Arabo affirms in his affidavit that he is the owner of the Cadillac. Arabo Aff. at 1. Accordingly, he has a "legally cognizable interest" in the property sufficient for Article III standing. *See Currency $267,961.07*, 916 F.2d at 1107.

### 2. Statutory Standing

In addition to having Article III standing, however, a claimant seeking to challenge a governmental forfeiture must

service of the Government's complaint or (2) completed publication of notice under Rule C(4), or (B) within the time that the court allows.

Supp. Rules for Certain Admiralty and Maritime Claims Rule C(6)(a)(i) (West 2004).

satisfy statutory standing requirements by complying with Supplemental Rule C(6). It is undisputed that Arabo did not file a verified claim with the Court with respect to the Cadillac. The Government served Arabo and Ford with notice of the judicial phases of the forfeiture proceeding, and complied with Supplemental Rule C(4)[4] by publishing notice regarding this action in the *Detroit Legal News*. Neither Arabo nor Ford, however, responded to the Government or filed a verified claim or answer.

Arabo states that he was in Las Vegas, Nevada, when the judicial phase of this proceeding began and that he returned on July 1, 2004. Arabo Aff. at 2. He says his mother, Nawal Arabo, received all mail and messages for him at his home. *Id.* Arabo says his mother does not read or speak English very well and she did not inform him while he was in Nevada of any documents that had arrived in the mail relating to this matter. *Id.* In the motion, Arabo states that he contacted Ford the day after he returned from Nevada (on July 2, 2004) and told Ford that he had been out of town and did not receive his mail. Arabo Mot. at 2. The hearing for the Government's motion for default judgment, however, did not take place until July 14, 2004—twelve days after Arabo apparently made contact with Ford after returning from Nevada. It is undisputed that Arabo and Ford were on notice about the hearing and about other matters relating to this case. Neither Arabo nor Ford, however, chose to attend the hearing on July 14 or take any other action with respect to this case.

Arabo has not complied with the statutory requirements under Supplemental Rule C(6) to gain standing. "The law is clear that the filing of [a verified] claim is an essential element of standing to contest a forfeiture." *U.S. v. One Gray Samsonite Suitcase, Model 200*, 637 F.Supp. 1162, 1166 (E.D.Mich.1986). Two recent unpublished decisions from this district emphasize this principle. *See U.S. v. One 2000 Lincoln LS Sedan*, Case No. 03–73593 (E.D.Mich., May 18, 2004); *U.S. v. One 1998 Corvette Convertible and One 2001 Pontiac Aztec SRV*, Case No. 03–73637 (E.D.Mich., May 18, 2004). Accordingly, Arabo does not have standing to contest the forfeiture.

SO ORDERED.

---

**4.** Supplemental Rule C(4) provides, in pertinent part:

> [T]he plaintiff must promptly—or within the time that the court allows—give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district, but publication may be terminated if the property is released before publication is completed. The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer.

Supp. Rules for Certain Admiralty and Maritime Claims Rule C(4) (West 2004).